881 So.2d 354 (2004)
William Henry CLAY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00631-COA.
Court of Appeals of Mississippi.
August 24, 2004.
*355 Michael R. Farrow, Columbus, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
EN BANC.
BRIDGES, P.J., for the Court.
¶ 1. William Henry Clay was convicted of both grand larceny and recidivism by the Circuit Court of Lowndes County, Mississippi. Clay was sentenced to life in prison without parole and appeals on the following issues:
STATEMENT OF THE ISSUES
I. DID THE STATE UNLAWFULLY AND SYSTEMATICALLY EXCLUDE MEMBERS OF THE DEFENDANT'S RACE FROM THE VENIRE WITH ITS PEREMPTORY STRIKES?
II. WAS JURY INSTRUCTION S-3A AN INCORRECT STATEMENT OF LAW?
III. DID THE COURT IMPROPERLY ADMIT EVIDENCE OF THE DEFENDANT'S PREVIOUS CONVICTIONS DURING THE SENTENCING PHASE OF THE TRIAL?
IV. WAS THE SENTENCE OF "LIFE WITHOUT PAROLE" GROSSLY DISPROPORTIONATE TO THE OFFENSE OF GRAND LARCENY?

FACTS
¶ 2. At about 1:30 p.m. on New Year's Eve, 2001, tools were stolen with an approximate value of $250 from a tool box in the back of Richard Childress' truck. Childress, a contractor, was parked at Lowes' Building Supply in Columbus, Lowndes County, Mississippi, at the time and the dual tool box in the rear of his truck contained the tools necessary for his trade.
¶ 3. A prosecution eyewitness testified that he saw two black men get out of a brown van and jointly load the tools from the truck to the van. A Lowndes County deputy sheriff was alerted and later two black men in a brown van were picked up. Clay was the passenger in this van. Clay admitted that he was in the car when the driver pulled along side Childress' truck *356 and took the tools and threw them in the van himself without help. Clay also testified that he was drunk on corn whiskey at the time the tools were stolen, but no arresting officers detected alcohol on his breath.
¶ 4. During jury selection, the prosecution used its four peremptory strikes to remove four prospective jurors who all happened to be black. Clay objected that the prosecution was systematically removing black jurors, but the trial judge supported the State's race-neutral justifications for the strikes. After the jury found Clay guilty, he was held to be an habitual offender and the judge considered his "prior violent criminal history" when sentencing him.

ANALYSIS

I. DID THE STATE UNLAWFULLY AND SYSTEMATICALLY EXCLUDE MEMBERS OF THE DEFENDANT'S RACE FROM THE VENIRE WITH ITS PEREMPTORY STRIKES?
¶ 5. In considering the first issue, Clay, who is a black male, claims that the State used all four of its peremptory challenges to exclude prospective black jurors. Clay also contends the race-neutral reasons supplied by the State in excusing these four potential black jurors were inadequate and incorrect, and no outside proof was offered to substantiate the reasons. Our standard of review requires a reversal only if the factual findings of the trial judge are "clearly erroneous or against the overwhelming weight of the evidence." Tanner v. State, 764 So.2d 385 (¶ 14) (Miss.2000). Any determination made by a trial judge under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is accorded great deference because it is "based, in a large part, on credibility." Coleman v. State, 697 So.2d 777, 785 (Miss.1997). The term "great deference" has been defined in the Batson context as meaning an insulation from appellate reversal of any trial findings which are not clearly erroneous. Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987).
¶ 6. The Batson decision provides procedural directives for the trial court to follow in detecting and disallowing the practice of using peremptory challenges to remove members of an identified racial group from jury service based upon nothing more than their racial identity. To successfully assert a Batson claim, the following procedure must occur:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Berry v. State, 728 So.2d 568 (¶ 11) (Miss.1999) (citing Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). "When the prosecution gives race-neutral reasons for its peremptory strikes, the sufficiency of the defendant's prima facie case becomes moot." Manning v. State, 735 So.2d 323 (¶ 28) (Miss.1999). Furthermore, if the defendant offers no rebuttal, the trial court may base its decision solely on those reasons given by the prosecution. Id. at (¶ 29).
¶ 7. In following proper procedure, Clay objected to the State's exercising its peremptory challenges against prospective black jurors. The judge noted that all of the State's strikes were against African-Americans and ruled that Clay had made a *357 prima facie case. The prosecution then proceeded with its racially-neutral reasons for doing so, as required by Batson.
¶ 8. The prosecution's first peremptory challenge was exercised against juror number twenty-two, Willie B. Nance. The prosecution stated that it had prosecuted many defendants and convicted several in the area with the last name Nance. After hearing these reasons the judge recalled hearing two cases of a person named Nance being prosecuted and found that this was a race-neutral justification for the exercise of the peremptory strike.
¶ 9. The second peremptory challenge was used against juror number twenty-four, Melissa Randle. The prosecution stated that its reasoning for striking Randle was the same as before, that it had prosecuted many Randles and that Ms. Randle had not answered the jury questionnaire about her family. The judge then requested the names and numbers of Randles prosecuted by the district attorney's office but the question could not be answered sufficiently. The judge ruled the reason was sufficiently race neutral to survive a Batson challenge, but that he could not rule on the reason's truthfulness.
¶ 10. The third peremptory challenge was used against juror number thirty-five, Travis Ledbetter. The prosecution again mentioned a previous prosecution of a Ledbetter, specifically Charles Ledbetter. Apparently, Charles is an infamous character to the judge because during Charles' prosecution he made accusations against the judicial system, the district attorney's office and the court. Charles and Travis are related and the judge quickly ruled this was a race-neutral strike.
¶ 11. The fourth and final peremptory challenge was used to strike juror number forty-two, Marie Hairston. The prosecution struck her because she was currently unemployed, it had prosecuted persons with her last name before, and she had failed to answer the question on her family when asked in the questionnaire. The judge found that the juror being unemployed was a sufficient race-neutral reason to strike Ms. Hairston.
¶ 12. We find the factual findings of the trial judge were not clearly erroneous or against the overwhelming weight of the evidence and that Clay presented insufficient evidence that the trial judge acted erroneously in allowing the prosecution's peremptory challenges to stand; thus, this issue is without merit.

II. WAS JURY INSTRUCTION S-3A AN INCORRECT STATEMENT OF LAW?
¶ 13. Jury instruction S-3A omitted the requirement that the jury find the value of the tools to be more than $250. Clay argues that it is the responsibility of the judge to see the jury is instructed properly. Duvall v. State, 634 So.2d 524, 526 (Miss.1994). The record reflects that no objection to this instruction was made during the trial and therefore appeal of this issue is barred. Id.

III. DID THE COURT IMPROPERLY ADMIT EVIDENCE OF THE DEFENDANT'S PREVIOUS CONVICTIONS DURING THE SENTENCING PHASE OF THE TRIAL?
¶ 14. After the jury returned the guilty verdict, the court then had a hearing and the State offered testimony as to whether Clay should be sentenced as an habitual offender. The State offered the testimony of Louis Stafford, a probation and parole officer. Clay in his appeal argues that the State proved the prior convictions of a "William Clay" but never "William Henry Clay." The documents offered by the State *358 regarding prior attempted rape and manslaughter convictions did only refer to "William Clay." However, in testimony Stafford and the State referred to Clay with all three names.
¶ 15. The record does not reflect that Clay objected to either the testimony or the documents when given and entered into evidence. A contemporaneous objection is required in order to preserve an error for appeal. Caston v. State, 823 So.2d 473 (¶ 102) (Miss.2002). This issue is without merit.

IV. WAS THE SENTENCE OF "LIFE WITHOUT PAROLE" GROSSLY DISPROPORTIONATE TO THE OFFENSE OF GRAND LARCENY?
¶ 16. The crime of grand larceny carries a maximum of five years imprisonment. Miss.Code Ann. § 99-17-41 (Rev.2000). Considering Clay's prior convictions for attempted rape in 1975 and for manslaughter in 1980, the judge conducted a proportionality review and sentenced Clay to life imprisonment without the possibility of parole. "[A] trial court will not be held in error or held to have abused [its] discretion if the sentence imposed is within the limits fixed by statute." Johnson v. State, 461 So.2d 1288, 1292 (Miss.1984) (citations omitted).
¶ 17. Mississippi Code Annotated section 99-19-83 (Rev.2000), sentencing of habitual criminals to life imprisonment, reads as follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
(Emphasis added)
¶ 18. The prior convictions of Clay meet the requirements of this statute and we find that the trial judge did not go beyond the required sentencing. Therefore this Court finds the trial judge was correct in his sentencing and this issue is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF GRAND LARCENY AND SENTENCE OF LIFE WITHOUT PAROLE AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
KING, C.J., LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., NOT PARTICIPATING.