896 So.2d 379 (2005)
Titus Depriest AVANT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02251-COA.
Court of Appeals of Mississippi.
January 4, 2005.
Rehearing Denied March 22, 2005.
David L. Walker, Southaven, attorney for appellant.
Office of Attorney General by Billy Gore, attorney for appellee.
Before KING, C.J., IRVING and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. Titus DePriest Avant a/k/a Titus D. Avant was convicted of the sale of cocaine and sentenced to eight years in the custody of the Mississippi Department of Corrections and twelve years post-release supervision. He has appealed and raises the following issues: (1) whether the trial court erred in overruling his objection to the empaneling of the jury and to the State's exercising peremptory challenges against certain prospective jurors, (2) whether the trial court erred in overruling his motion to interrogate the prospective *380 jurors concerning the basis offered by the State for its challenges, and (3) whether the trial court erred in sentencing him to twelve years of post-release supervision.
¶ 2. We find no reversible error; therefore, we affirm the decisions of the trial court and the resultant conviction and sentence.

FACTS
¶ 3. Avant does not challenge the sufficiency or the weight of the evidence supporting his conviction; therefore, a long recitation of the facts is not necessary. Suffice it to say that his conviction was based on an undercover purchase of cocaine involving audio and video recording of the transaction.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Batson Challenges to Prospective Jurors
¶ 4. Avant argues that the trial court erred in accepting as race-neutral the State's explanation for striking veniremen Kenneth Richardson, Bobby Walton, Jr., Calvin Dandridge, and Jerry Ballard and in empaneling the jury without these persons being members of the panel. The State counters that the reasons offered by the State were race-neutral and that no error occurred in permitting the strikes by the State.
¶ 5. We are limited in our review of the trial court's decision accepting as race-neutral the explanations given by the State for striking particular veniremen in the face of a Batson challenge.
We give great deference to the trial court's findings of whether or not a peremptory challenge was race-neutral.... Such deference is necessary because finding that a striking party engaged in discrimination is largely a factual finding and thus should be accorded appropriate deference on appeal.... Indeed, we will not overrule a trial court on a Batson ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence....
Lynch v. State, 877 So.2d 1254(¶ 46) (Miss.2004) (quoting Walker v. State, 815 So.2d 1209, 1214(¶ 10) (Miss.1202)). "The trial judge acts as finder of fact when a Batson issue arises." Id. at (¶ 47) (citing Walker, 815 So.2d at 1215). "The race neutral explanations must be viewed in the light most favorable to the trial court's findings." Id."`[A]ny reason which is not facially violative of equal protection will suffice....'" Lynch, 877 So.2d at 1271(¶ 49) (quoting Randall v. State, 716 So.2d 584, 588(¶ 16) (Miss.1998)).
¶ 6. We combine Avant's first two issues as they are interrelated. As observed in the earlier portion of this opinion, Avant's first issue involves the explanations given by the State for striking certain veniremen and the court's acceptance of those explanations as race neutral. The second issue involves the refusal of the court to allow interrogation of those veniremen for the purpose of ascertaining the verity of the reasons given by the State for striking the veniremen.
¶ 7. Our review of the record supports the State's assertion that the reasons offered by the State were race-neutral and that the trial court did not err in ruling accordingly. We review the explanations given in support of the peremptory strikes. The first juror that was struck was Kenneth Richardson, and the prosecutor gave the following explanation for striking Richardson:
KELLY: Peremptory number 1 was against Kenneth Richardson who told us that he grew up with the defendant, *381 they went to school together, and they, in fact, were good friends.
THE COURT: That is reflected by no notes as well, and the court will accept that as a race neutral reason.
¶ 8. The second strike was against Juror Bobby Walton, Jr. In support of this strike, the prosecutor gave the following explanation:
KELLY: Peremptory number 2 was used against Bobby Walton, Jr. who told us that he went to school with the defendant, that he was friends with the defendant, that he was familiar with the apartments where this alleged event occurred.
[THE COURT:] My notes do reflect those responses and the court will accept that as a race neutral reason.
¶ 9. The third juror that was struck was Melvin (Calvin) Dandridge. The following explanation was given for striking him:
KELLY: Mr. Dandridge, I am told by the deputy sheriff James Rudd, is the stepfather of two people who were indicted and have an indictment pending in this court for drug sales at Domino's Pizza. If, in fact, Mr. Rudd's information is accurate, then I think that is a race-neutral reason. Mr. Dandridge did not tell the court or the prosecution that any of his family members were being prosecuted. I think the court asked about the past. I don't think I asked about the present. So technically Mr. Dandridge has not misstated anything. But if, in fact, he has a stepson who is under indictment for drug sales at Domino's Pizza, I assert that's a race-neutral reason.
DEFENSE COUNSEL WALKER: Your Honor, in rebuttal, the state has offered no proof as to the knowledge of Melvin Dandridge, number 31, as to the allegations made by Mr. Kelly. I would request the court to ask Mr. Dandridge to come back and interrogate him as to that knowledge. That's my rebuttal. There's no proof that he knows anything about these drug indictments, or whether they've even been served.
THE COURT: Mr. Kelly says that he's been provided information by Mr. Rudd who is chief deputy in this county and one who is responsible for serving these indictments, and certainly Mr. Kelly is entitled to rely on information that is provided to him by third parties, in this case deputies with the sheriff's department. He doesn't have to prove that, but that information was provided to him. Certainly it is a race-neutral reason. As stated, it's been asked a number of ways. The record will reflect whether or not we asked about current prosecution. I do believe I normally phrase my question as to whether they or close members of their family have been prosecuted in the past. So I don't know that he was intentionally trying to mislead the court. As stated, the record will just have to bear out specifically what those questions are. But based on that information, the court will accept that a race-neutral reason, unless you have something to rebut that with.
¶ 10. The fourth and final venireman that was struck was Jerry Ballard, and the record reflects the following as the initial basis for striking him:
MR. KELLY: Juror number 44 is Mr. Jerry Ballard. I am told by Mr. Rudd or Jackie Smith or both that this person knows Mr. Avant's family.
Later on, after a recess and after conferring again with Mr. Rudd, Mr. Kelly advised as follows:
During the recess when Mr. Walker was conferring with Mr. Avant, I believe the court also gave Mr. Walker an opportunity to speak to either Mr. Rudd or *382 Jackie Smith or both. During that recess, I again spoke with Mr. Rudd. I cannot assert that juror number 44 has any knowledge of [sic] Mr. Avant's family. What I can assert is that I was told by Mr. Rudd that under no set of facts or circumstances was I to allow juror number 44 to serve on this jury.
* * * * * *
The word I was told is bogus, b-o-g-u-s, that juror number 44 is bogus and I was not to allow him to serve.
¶ 11. Avant offered no rebuttal to any of the assertions made by the State as the reasons for striking the veniremen. Therefore, we consider only the explanations given by the State.
¶ 12. It is obvious, and well settled in the law, that the explanations given for striking Jurors Richardson and Walton are race-neutral. See Overstreet v. State, 787 So.2d 1249 (Miss.2001) (holding that friendship with a defendant is a valid race-neutral reason); Govan v. State, 591 So.2d 428 (Miss.1991) (holding that a significant acquaintance with the accused is a valid race-neutral reason).
¶ 13. As noted earlier, the State struck Dandridge because he allegedly had a stepson currently under indictment for selling drugs at Domino's Pizza. However, the prosecutor making the strike did not have personal knowledge of this fact. This information was provided to the prosecutor by a deputy sheriff of Panola County.
¶ 14. Avant does not really argue that the explanation given for striking Juror Dandridge was not race-neutral. Rather, he contends that the explanation offered is not one of the ones listed in Lockett v. State, 517 So.2d 1346 (Miss.1987) or one that has been recognized by this Court or the Mississippi Supreme Court.[1] Avant is wrong in his assertion that having a stepson currently under indictment is not acknowledged in Lockett as a race-neutral reason for peremptorily striking a perspective juror. See Id. at 1356-57 (recognizing a juror's relative in a contemporaneous criminal proceeding and a juror's two sons having been in trouble with the law as race-neutral reasons for striking the juror).
¶ 15. We turn to the last venireman that was struck by the State, venireman Jerry Ballard. As previously stated, the reason for the State's striking of Ballard was that Ballard was bogus. Avant argues that this explanation is not specific and is too broad. He also argues that the appellate courts of this state have not recognized a "bogus juror" as a race-neutral designation.
¶ 16. In permitting the State to strike Ballard, the trial judge made the following ruling:
THE COURT: I will accept what the prosecution has said. Let me back up. I want to make sure that the record is abundantly clear.
A few moments ago when Mr. Kelly was first asked to state reasons for striking the first set of jurors, he gave reasons to the court, and on Mr. Ballard it included knowing Mr. Avant's family. During the recess when Mr. Walker and Mr. Kelly and the defendant himself had an opportunity to talk with Mr. Rudd, they realized that Mr. Rudd was mistaken as to which of the several defendants went to trial this morning, there being several defendants on the docket this morning, *383 and he, in fact, was under the impression that Mr. Ellis had gone to trial. So the representations he made about the defendant's family and the defendant's mother in 38 and 44 were incorrect. Mr. Kelly now tells me that based on information from law enforcement, and he has referred a time or two to Jackie Smith, who is the investigator for the district attorney's office, who herself is a black female, Mr. Rudd being a black male, chief deputy, that the information he has received from them is that this juror Ballard is bogus. I'll take that in the matter in which it is normally known and for that reason they feel he would not be a juror that they would want on any case that they were involved in. And I'll accept that as a race neutral reason.
¶ 17. The term "bogus" means "counterfeit or fake." THE AMERICAN HERITAGE COLLEGE DICTIONARY 156 (3d ed.1997). Clearly, Juror Ballard is real. No person can literally be counterfeit or fake. Therefore, it is clear that the reference to Ballard's being bogus was a reference to his character and veracity. Stated another way, the assertion was being made that the State could not trust Ballard to adhere to his oath to weigh and determine the case based on the evidence alone, notwithstanding Ballard's representation to the contrary. This was the obvious reason for striking Ballard.
¶ 18. We do not know the basis for Chief Deputy Rudd's holding Ballard in such low esteem. Nothing in the record informs us. It would have been helpful to have an explanation in the record. Nevertheless, on this record, we cannot find that the decision of the trial judge, finding the explanation to be race-neutral, is clearly erroneous. We also observe that the trial court gave Avant and his counsel an opportunity to talk with Chief Deputy Rudd, and apparently they did so. However, after talking with Rudd, neither Avant nor his counsel offered anything to contradict Rudd's assessment of Ballard. In determining whether a race-neutral explanation is pretextual, the burden remains with the opponent of the strike. Lynch, 877 So.2d at 1272(¶ 52) (citing Berry v. State, 802 So.2d 1033, 1042 (Miss.2001)). Therefore, since Avant failed to carry his burden, we affirm the decision of the trial judge allowing the peremptory strike of venireman Ballard.
¶ 19. Avant's also advances the argument that the trial court erred in refusing his request to bring the jurors in question into the judge's chambers for interrogation concerning the allegations made by Chief Deputy Rudd. In refusing the request, the trial judge stated:
Mr. Walker, I'm not going to bring these jurors back and interrogate them individually. I will give you an opportunity, if you wish, let you take a break in a moment and attempt to verify that information, not with these jurors, but those same deputies are here and present in the courthouse. Obviously Mr. Avant is here, his family is here. I will give you that opportunity if you have something to rebut that information with when we go forward. But based on the representations that have been made and the information that Mr. Kelly tells us he has received from third parties, in particular Chief Deputy James Rudd, I will accept that as a race neutral reason.
¶ 20. While Advant argues that the trial court should have interrogated the jurors in chambers, he offers no authority for such proposition. See Jones v. Howell, 827 So.2d 691, 702(¶ 40) (Miss.2002) (holding that it is the duty of the appellant to provide authority in support of his assigned issues). Since Avant has cited no authority for this issue, we decline to consider *384 it further as it is procedurally barred. Id.

2. The Legality of Avant's Sentence
¶ 21. In this issue, Avant argues that the trial court erred in sentencing him to twelve years of post-release supervision. He cites Mississippi Code Annotated section 47-7-34 (Rev.2004) in support of his position. This code section limits to five years the period of time which the Mississippi Department of Corrections may supervise an offender on post-release supervision.
¶ 22. While Avant correctly points out that section 47-7-34 limits to a period of five years the Mississippi Department of Corrections's authority to supervise an offender on post-release supervision, this limitation on the department's authority to supervise does not, according to the pronouncement of our supreme court, limit to five years the period of post-release supervision which a trial judge may give to a prior-convicted felon. Our supreme court has made it clear that a trial judge may sentence a prior-convicted felon to more than five years of post-release supervision, provided the period of incarceration and the period and post-release supervision do not exceed the maximum period of time allowed for the offense. See Miller v. State, 875 So.2d 194(¶ 10) (Miss.2004). Therefore, this issue is without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF THE SALE OF COCAINE AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TWELVE YEARS POST-RELEASE SUPERVISION, FIVE OF WHICH YEARS ARE REPORTING POST-RELEASE SUPERVISION AND SEVEN YEARS NON-REPORTING POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] In Lockett, the Mississippi Supreme Court offered in Appendix I a non-exhaustive list of reasons found by other courts to be racially neutral reasons which are not proscribed by Batson. The supreme court noted that the reasons list in Appendix I were "merely illustrative examples." Lockett, 517 So.2d at 1356.