743 So.2d 392 (1999)
Dennis C. GAYLE a/k/a Dennis Caral Gayle, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01220COA.
Court of Appeals of Mississippi.
April 20, 1999.
Rehearing Denied June 22, 1999.
Certiorari Denied September 2, 1999.
*396 Michael L. Fondren, Pascagoula, Attorney for Appellant.
Office of the Attorney General by Charles W. Maris Jr., Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Dennis C. Gayle was convicted of aggravated assault by a Jackson County Circuit Court jury. He appeals arguing that (1) two prohibited contacts occurred between prosecutors and jurors; (2) the trial court erred in allowing evidence of a prior bad act of the defendant; (3) the State failed to provide race neutral reasons for striking three black jurors; (4) the trial court erred in granting two of the State's requested instructions and in failing to grant Gayle's circumstantial evidence instruction; and (5) the prosecutor impermissibly commented during closing argument on the defense's failure to call a particular witness. Finally, Gayle challenges (6) the weight and sufficiency of the evidence. We find no error in the trial court's resolution of these issues and affirm.

FACTS
¶ 2. On April 17, 1995, Bobby Hunter and a friend were sitting under a tree near his home in Moss Point, Mississippi. They were joined by Dennis Gayle and Cedric Brown. After chatting briefly, Gayle and Brown left only to return soon thereafter with a third unidentified individual. As they approached Hunter, he later testified that he heard a "clinking" sound and that Gayle then struck him with a bottle. Hunter tried to run away, but the three caught him. He was then kicked and beaten with sticks, bottles, and bricks. Someone yelled "police." At that point, the three fled.
¶ 3. Hunter ran to a neighboring yard and the police were called. Hunter told police that Dennis Gayle was one of his attackers and that the last name of another one was Brown. He never was able to identify the third man. Hunter was treated at Singing River Hospital for a broken nose, a laceration over his eye requiring seven stitches, and multiple bruises and swelling about his scalp and face. Surgery was eventually performed to repair his broken nose.
¶ 4. After leaving the hospital, Hunter found out from some friends that his second attacker was Cedric Brown. Both Gayle and Brown were arrested and charged with aggravated assault. They were tried together. Gayle was convicted and instituted this appeal.

DISCUSSION

I. Improper prosecutorial contact with jurors
¶ 5. In this case there was contact between prosecutors and jurors on two *397 different occasions. The court found that the contact had been both innocent and harmless. Whether that finding should be sustained is examined in the same manner as "violations of the witness sequestration rule. The Court has applied a `clearly erroneous' standard to the trial court's finding of harmless error." Esparaza v. State, 595 So.2d 418, 425 (Miss.1992).

A. Contact with ill juror
¶ 6. Gayle points to two incidents that he considers to be improper contact by the prosecution with jurors. On one occasion, as the jurors were entering the jury box, a juror became pale and appeared as if he might faint. One of the prosecutors, a registered nurse, checked the juror's pulse. The other prosecutor asked the juror if he was diabetic. Paramedics arrived soon thereafter and treated the juror, who refused to go to the hospital. He continued to serve on the jury.
¶ 7. The defense moved for a mistrial on the basis of the prosecutor's actions. They stated that such actions were commendable but for that very reason the jury might be influenced to the detriment of the defendant. The court questioned the jury, asking if anyone "saw or heard anything that would affect their decision." All jurors indicated that they had not and the trial proceeded.
¶ 8. The concern here is that the actions of the prosecutor in treating the ill juror somehow ingratiated her with jurors. Initially, this was a decision for the trial judge to make. Had a mistrial been granted, that would be understandable. However, we do not find the failure to do so to be clearly erroneous.
¶ 9. Had the juror indeed been involved in a more significant health crisis or if the prosecution had rendered greater aid, for instance, bringing the juror back from the brink of death, the trial judge's failure to grant a mistrial would be an abuse of discretion. At some point between lending a hand to an elderly juror to help him step up onto the jury platform and performing C.P.R. to rescue a juror from death, assistance would require a mistrial. The assistance should be rendered despite the risk of a mistrial. Here, the record reveals that the prosecutor was just one of several individuals rendering aid to the juror. She checked the juror's pulse and left him. We cannot say that this is a contact which would "threaten public confidence in the fairness of jury trials...." Great American Surplus Lines Ins. Co. v. Dawson, 468 So.2d 87, 90 (Miss.1985) (quoting Lee v. State, 226 Miss. 276, 286, 83 So.2d 818, 821 (1955)).

B. Juror in the district attorney's office
¶ 10. The second contact of which Gayle complains occurred immediately prior to the incident involving the ill juror. During a break, counsel for the defense saw a juror and the bailiff enter, then exit the offices of the district attorney. A short hearing was held on the question. The prosecutor indicated that a juror told the bailiff that he needed to send a facsimile copy of a document, perhaps to the juror's employer but the prosecutor did not know. While the juror was in the prosecutor's office, a prosecutor and the victim entered the offices. The prosecutor was heard to instruct the bailiff and juror to leave and to admonish the victim not to speak to the juror. The bailiff also was questioned. The bailiff stated that the juror needed to fax his jury notice to his employer so that he might be excused from work. He claimed that no one spoke to the juror with the exception of the prosecutor instructing them to leave. The juror likewise claimed that he had no contact with anyone. He further denied that his decision in the case would be affected by the incident.
¶ 11. The judge denied the defense motion for a mistrial, reasoning that because the juror did not hear anything nor speak to anyone, nothing improper occurred. The bailiff was admonished for escorting a *398 juror into the offices of the district attorney.
¶ 12. In another case, a deputy sheriff paused to speak with a potential juror before the attorneys began selection. Esparaza, 595 So.2d at 424. The court held that "[o]n the facts of this case, however, given the short and innocuous conversation, the opportunity for voir dire of the juror, and the fact that the prospective juror did not serve, the court's failure to quash the jury venire did not constitute reversible error." Id. at 425.
¶ 13. In the present case, no conversation occurred, other than the prosecutor instructing the juror to leave. Voir dire of both the juror and the bailiff was conducted. We find that although improper, the contact does not constitute reversible error. The incident highlights how quickly a normal activity such as notifying a juror's employer of jury duty can turn into a trial-endangering incident. Jurors need to receive the assistance of someone on behalf of the State that is requiring the jury service. It should not be the prosecutor, but perhaps the circuit clerk's office or even the judges if the relevant equipment such as a fax machine is available. Here, though, we do not find the court to have been clearly erroneous in determining the incident was harmless.

II. Impermissible evidence of prior bad act
¶ 14. Gayle challenges the denial of his motion for a mistrial, or alternatively severance, following remarks by the prosecution during opening argument. The prosecutor referred to the victim's initial identification of his attackers as Dennis Gayle and his co-defendant, Cecil Brown. According to the prosecution, the victim informed police that "[Brown]'s the one, he's a little bit funny in that he was injured previously by Dennis Gayle."
¶ 15. Gayle's counsel objected that his client's possible former assault of Brown was injected into the case. The objection was overruled, after the prosecutor argued that the jury was not told in his opening statement that it was wrongful injury, as perhaps an accidental injury was being referenced. The subsequent motion for a mistrial was also overruled. What was never told the jury was that Gayle was alleged to have choked Brown years earlier, cutting off oxygen to his head and leaving him permanently brain-damaged. Those details might have injected an extraneous issue capable of leading some jurors to convict because of other bad acts, not the act for which the trial was occurring. However, those details were never revealed. During direct examination of the victim, Bobby Hunter, the prosecution again inquired as to how he identified Cedric Brown to the police. Defense counsel objected and the prosecution responded that it went to the identification of Brown. The trial judge sustained the defense motion, finding that there was sufficient evidence in the record that the victim identified Brown by his last name and a description. The trial judge offered to give a curative instruction to the jury which the defense submitted at the close of all the evidence. Therefore the only statement ever made to the jury regarding all of this was from the prosecutor, and that was that Brown had been "injured previously by Dennis Gayle."
¶ 16. Jurors are presumed to follow the trial judge's instructions. Cavett v. State, 717 So.2d 722, 729 (Miss.1998). Additionally, "[a] trial judge is in a better position to assess the effect of incidents which may require a mistrial than is this Court on appeal, and this Court will not reverse on the failure to grant a mistrial unless the trial judge abused his discretion in overruling the motion for a mistrial." Id.
¶ 17. Following the improper remark, Gayle's motion for a severance was denied as well. The trial judge has the discretion to grant a severance if it is necessary to promote a fair determination of the defendant's guilt or innocence. Stevens v. State, 717 So.2d 311, 312 (Miss. *399 1998). There are a number of criteria to be used to determine if the denial of a motion for severance is proper. These criteria are whether or not the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant and whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. Absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion. Id. at 312-13.
¶ 18. Gayle has not demonstrated that any evidence at trial exculpated his co-defendant at his expense. The victim testified that both Gayle and Brown struck him. Neither defendant took the stand and attempted to shift blame to the other. The evidence in this case tended to implicate both defendants equally. In short, Gayle has not demonstrated any prejudice by the joint trial.

III. Batson violation
¶ 19. Gayle next contends that the State improperly struck three black jurors from the jury panel due to their race. Moreover, he alleges that the reasons given by the State for the exercise of their peremptory challenges were insufficient and based on subjective considerations.
¶ 20. The United States Supreme Court has established a three step process for determining whether a party has improperly utilized peremptory challenges for the purpose of racially discriminating against potential jurors in violation of the Equal Protection Clause. Stewart v. State, 662 So.2d 552, 557 (Miss.1995) (citing Batson v. Kentucky, 476 U.S. 79, 96-98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). The party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory challenge. Id. If this initial showing is successful, the party desiring to exercise the challenge has the burden to offer a race-neutral explanation for striking the potential juror. The trial court must then determine whether the objecting party has met his burden to prove there has been purposeful discrimination in the exercise of the peremptory. Id.
¶ 21. On appeal, the State argues that Gayle failed to establish a prima facie case of discrimination in the jury selection. It contends that an objection based on the fact that the defendant and the stricken venireman are of the same race is insufficient to establish a prima facie case of racial discrimination.

A. Prima facie case
¶ 22. In the first generation of case law after Batson, a prima facie showing of discrimination required that the opponent of the strike show "(1) [t]hat he is a member of a `cognizable racial group,'" "(2) [t]hat the proponent has exercised peremptory challenges toward the elimination of veniremen of his race," and "(3) [t]hat facts and circumstances raised an inference that the proponent used his peremptory challenges for the purpose of striking minorities." Randall v. State, 716 So.2d 584, 586-87 (Miss.1998) (citing Batson, 476 U.S. at 96, 106 S.Ct. 1712).
¶ 23. This test, however, has been modified by Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In that case the Supreme Court held that Powers, a white, had standing to challenge the exclusion of black jurors on the grounds that the equal protection right of the juror to serve was protected by Batson. Id. at 406, 111 S.Ct. 1364. The Mississippi Supreme Court interpreted that to mean "that step three above becomes the pivotal inquiry to determine a prima facie case." Davis v. State, 660 So.2d 1228, 1240 (Miss.1995). Specifically, the pivotal question is whether "the totality of the relevant facts gives rise to an inference of discriminatory purpose." Randall, 716 So.2d at 587 (citing Batson, 476 U.S. at 94, 106 S.Ct. 1712). The burden to prove that is on the party opposing the strikes.
*400 ¶ 24. In determining whether a prima facie case has been established, the Mississippi Supreme Court has considered "the number of strikes on a particular class, the ultimate ethnic or gender makeup of the jury, the nature of questions asked during the voir dire, and the overall demeanor of the attorney." Id. Additionally, the opponent of the strike "may also rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate." Id.
¶ 25. Of the three peremptory strikes exercised by the State, all of them were used against black veniremen. The ultimate makeup of the jury consisted of only one black person. The supreme court has held that the defendant failed to make his prima facie case where the prosecution used five of seven, or approximately seventy-one percent of its peremptory challenges against black jurors. Dennis v. State, 555 So.2d 679, 681 (Miss.1989). Though the State argues that this does not constitute a prima facie case, the trial court decided to require the State to explain its reasons. Though that can be reversible error when the defendant is ordered to give reasons before a prima facie case is made, no such rule applies to the State. Stewart v. State, 662 So.2d 552, 559 (Miss.1995). When the State is ordered to give reasons for strikes, or just gives the reasons voluntarily before a judge orders that to occur, the issue of whether there is a prima facie case made of discrimination is moot. We reject the State's argument to the contrary in part because mootness of the prima facie issue becomes outcome-determinative only if the State's reasons, given despite the absence of a prima facie case, were not race-neutral. That would mean that even though there was not initially enough reason to suspect the State, when they were put to the test they failed. If the failure to make a prima facie case keeps us from reaching the merits of the strike despite the evidence on the record, we would become party to that discriminatory strike.

B. Racially neutral explanation for exercise of peremptory challenges
¶ 26. Once the defendant has established a prima facie case of discrimination to the satisfaction of the trial court, the prosecution must supply reasons which are racially neutral. The prosecutor does not have to provide the same degree of justification for a peremptory challenge as is required for a challenge for cause. Kolberg v. State, 704 So.2d 1307, 1312 (Miss. 1997). The establishment of a race neutral reason is not a difficult task. Stewart v. State, 662 So.2d 552, 558 (Miss.1995).
¶ 27. The jurors struck by the State were Mary Ann Culbreth, Jack Nelson, and Deborah Stanton. Following a defense objection, the trial judge asked the State to give its reasons for striking the jurors. The State responded that Mary Ann Culbreth knew several individuals involved in the case, including the victim, that she attended church with one of the witnesses, was responsive to defense counsel, and snickered when the State questioned the jury about following the law. As for Jack Nelson, he did not complete his juror card, seemed unresponsive to the State, and laughed at the antics of defense counsel. Finally, Deborah Stanton seemed inattentive, crossed her arms during voir dire, lived near the crime scene, and was unmarried.
¶ 28. The trial judge found all of these to be sufficiently race neutral reasons and overruled the defense objection to the State's exercise of its peremptory challenges. We agree.
¶ 29. The supreme court has upheld peremptory challenges based on a juror's dress, age and demeanor. Bradley v. State, 562 So.2d 1276, 1283 (Miss.1990). Additionally, a prosecutor may rely on a suspicion arising from a juror's demeanor that he is hostile to being in court and might blame the government for calling *401 him to jury duty. Lockett v. State, 517 So.2d 1346, 1351 (Miss.1987). That a prospective juror was inattentive and giggling during voir dire has also been held a racially neutral explanation. Hatten v. State, 628 So.2d 294, 297 (Miss.1993). In Lockett, the court offered an appendix of racially neutral reasons upheld by other courts in an effort to provide some guidance to Mississippi trial courts. Lockett, 517 So.2d at 1353. Although merely illustrative examples, we find it noteworthy that demeanor, incomplete juror card, and responsiveness to the defendant were cited. Id. at 1357. The reasons offered by the prosecution in the present case were race neutral.

C. Opportunity for rebuttal
¶ 30. The defendant is allowed to rebut the reasons which have been offered by the prosecution. Taylor v. State, 524 So.2d 565, 566 (Miss.1988). When the defendant offers no rebuttal, the court is forced to examine only the reasons given by the prosecution. Johnson v. State, 529 So.2d 577, 584 (Miss.1988). Gayle failed to offer any rebuttal to the reasons given by the prosecution. Though a reason may be facially neutral, those reasons may be pretexts for racially discriminatory purposes. Id. at 639. The trial judge did not find them so.
¶ 31. "[A] trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference and will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence." Stewart, 662 So.2d at 558. The trial judge did not err.

IV. Jury instructions
¶ 32. Gayle challenges the denial of one instruction and the grant of two others. First, we will discuss the two instructions which Gayle alleges were erroneously granted the State.

A. Aiding and abetting
¶ 33. Gayle argues that this was not an aiding and abetting case. He complains that the instruction varies from the State's theory of the case and the facts presented at trial.
¶ 34. Jury instructions may not be given unless there is some evidentiary basis in the record with which to support them. Perry v. State, 637 So.2d 871, 877 (Miss.1994). There was testimony at trial that Gayle acted as the principal when he struck the victim with a beer bottle. Testimony also revealed that Gayle acted to aid and abet his co-defendant, Cedric Brown, by holding the victim while Brown kicked him and struck him with sticks and bricks. The instruction was properly given.

B. Aggravated assault
¶ 35. State instruction 8(a)(2) instructed the jury that if they found that the defendant, Dennis Gayle, "(1) [d]id purposeful and knowingly cause bodily injury to Bobby Hunter with a deadly weapon ... and (2)[t]hat the incident occurred in Jackson County, Mississippi ... then you shall find the Defendant, Dennis Carl Gayle, guilty of Aggravated Assault." Gayle argues that this instruction did not address simple assault so that when reading it, the jury would not know that they had the option of convicting Gayle of simple assault rather than aggravated assault.
¶ 36. As Gayle acknowledges in his brief, the jury was given a simple assault instruction. Instruction DG-7 gave the jury the option of convicting Gayle of simple assault. This Court's standard in reviewing jury instructions is to read all instructions together to determine whether the jury has been correctly instructed. As long as the instructions given to the jury as a whole fairly and adequately state the law and are supported by the evidence, reversal is inappropriate. Wall v. State, 718 So.2d 1107, 1112 (Miss.1998).

*402 C. Two theory instruction

¶ 37. Finally, Gayle argues that his proposed instruction DG-5 should have been granted. The instruction stated that "if there be any fact or circumstance in this case susceptible of two interpretations, one favorable and the other unfavorable to Dennis C. Gayle ... they must place upon such fact or circumstance the interpretation favorable to Dennis C. Gayle." Only in cases consisting entirely of circumstantial evidence must such an instruction be given. Petti v. State, 666 So.2d 754, 757 (Miss.1995). This case was not entirely or even significantly circumstantial. The victim's testimony provided direct evidence of the crime. The denial of the instruction was proper.

V. State's comment on defense failure to call a witness
¶ 38. During cross-examination of the victim, he testified that he thought Andrew Liverett was a witness to the crime. In closing arguments, the State remarked "[the defendant] could have subpoenaed him and they chose not to. That was supposedly their witness." The trial judge overruled the defense objection.
¶ 39. The failure of either party to examine a witness equally accessible to both parties is not a proper subject for comment before a jury. Brown v. State, 200 Miss. 881, 27 So.2d 838, 840 (1946). When the record provides no proof of the absent witness's accessibility or inaccessibility, it nonetheless presumes that both parties had equal access to the witness. Ross v. State, 603 So.2d 857, 864 (Miss. 1992). In Brown, the court held that the rule barring comment did not apply where a witness, while technically accessible to both parties, stood more available to the complaining party. Id. Where a defendant fails to call a witness more available to him and presumptively in a closer relationship with him, the State is entitled to comment. Id.
¶ 40. It is unclear if Liverett was more available to Gayle than to the State. It is possible and perhaps likely that Liverett was more available to the defense than the prosecution, as he was someone else who lived in the neighborhood. If that were so, the remark by the prosecution was entirely proper. However, there is little evidence of the extent of anyone's relations with Liverett. We presume that Liverett was equally available to both parties. The comment was improper.
¶ 41. An improper comment on failure to call a witness does not require reversal unless the probable effect of the improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice. Taylor v. State, 672 So.2d 1246, 1270 (Miss.1996). The comment by the prosecution likely had little impact at all, and was not so prejudicial so as to deprive Gayle of a fair trial. Defense counsel used similar arguments, discussing several witnesses that the State had failed to call, among them the ambulance driver and the victim's aunt.

VI. Weight and sufficiency of the evidence

A. Sufficiency of the evidence
¶ 42. Gayle argues that the State failed to prove he committed an aggravated assault as opposed to a simple assault. He claims that he did not cause serious bodily harm because the victim's injuries were "minor." Moreover, there was no credible proof that a deadly weapon was used in the attack. Although the victim testified that he heard the "clink" of bottles right before he was struck, he never actually saw the bottle. He certainly felt something though.
¶ 43. When reviewing a challenge to the sufficiency of the evidence, this Court considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict. We will affirm when the evidence was such that *403 reasonable jurors could have found the defendant guilty. Dudley v. State, 719 So.2d 180, 182 (Miss.1998).
¶ 44. The statute under which Gayle was indicted provides that a person shall be guilty of aggravated assault if he "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm...." Miss.Code Ann. § 97-3-7(2)(b) (Rev.1994) (emphasis added). No proof of a serious bodily injury is required. Regardless, the victim's injuries could have been found to be serious. The physician who treated him at the emergency room testified that the injuries were possibly "severe," in that there was a risk of intercranial injury. The physician who ultimately performed surgery on his broken nose stated that the swelling was so severe that surgery had to be postponed for one week.
¶ 45. Section 97-3-7(2)(b) of the Mississippi Code requires proof of the use of a deadly weapon, and Gayle complains that the State failed to establish that such a weapon was used in the commission of the crime. The victim testified that the site where he was assaulted was once a popular hangout for people to drink. Because of this, there were numerous glass bottles littering the ground. Just before he was hit, he heard a "clink," which he took to be the sound of a bottle.
¶ 46. The existence of a deadly weapon is a question of fact for the jury to decide. Davis v. State, 530 So.2d 694, 702 (Miss.1988). The jury was instructed that "it is a question of fact for you to determine beyond a reasonable doubt whether the bricks, bottles, and/or other objects... were deadly weapons in the manner they were allegedly used in this case." The instruction went on to define a deadly weapon as "any object, article, or means which, when used as a weapon, under the existing circumstances, reasonably capable of or likely to produce death or serious bodily harm to a human being upon whom the object, article, or means is used as a weapon." The jury was properly instructed and determined that the bottle was a deadly weapon. We find no error.

B. Weight of the evidence
¶ 47. "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Dudley v. State, 719 So.2d 180, 182 (Miss.1998). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Id.
¶ 48. Gayle argues that the only evidence to support his conviction is the testimony of the victim. Testimony from a single credible witness is sufficient to sustain a conviction. Holmes v. State, 660 So.2d 1225, 1227 (Miss.1995). The jury clearly believed the victim. That is sufficient.
¶ 49. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS SUSPENDED AND RESTITUTION TO THE VICTIM IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST JACKSON COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.