811 So.2d 471 (2002)
Roy Frank MONTGOMERY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01904-COA.
Court of Appeals of Mississippi.
March 19, 2002.
*472 Mark G. Williamson, Starkville, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before McMILLIN, C.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the Court.
¶ 1. This case comes from the Circuit Court of Oktibbeha County, Honorable Lee J. Howard presiding. Roy Frank Montgomery was found guilty by a jury of two counts of the sale of a controlled substance *473 and was sentenced to a ten-year and six-year consecutive sentence in the custody of the Mississippi Department of Corrections. Montgomery has appealed and comes to this Court bringing one issue:
WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO ACCEPT AS RACE-NEUTRAL THE EXPLANATION MONTGOMERY GAVE FOR STRIKING THREE JURORS.
¶ 2. Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 3. During jury selection, the State raised a Batson challenge to Montgomery's use of his peremptory challenges on the jury pool. The State alleged Montgomery was using his peremptory challenges to strike white jurors from the jury pool. Montgomery replied he had not struck all the white people from the jury. The trial court required Montgomery to state into the record his race-neutral reasons for using his peremptory challenges.
¶ 4. Montgomery struck jurors numbered one, two, fifteen, twenty-one, twenty-three, and twenty-seven. The trial judge accepted the race-neutral explanations for jurors two and twenty-three but denied the remainder of the race-neutral reasons for the challenged jury members.
¶ 5. Regarding juror number one, Montgomery reasoned that he had seen juror number one around town, had heard him speak, and did not like juror number one. The trial court found this was not a race-neutral use of Montgomery's peremptory challenge. Juror fifteen was a painter and Montgomery was afraid he might somehow be related to Mr. Pittman, a confidential informant used in the case. The trial court struck this down because Montgomery could simply have asked the juror if Pittman was indeed a relative. A similar peremptory challenge was struck down in relation to juror number twenty-one. Montgomery's attorney thought the juror might know a person the attorney formerly employed and fired. Montgomery's attorney was afraid this might cause the juror to be prejudiced towards Montgomery. The trial court refused to accept this reason as a race-neutral basis because the attorney could also have asked the juror on voir dire if he knew the person. Furthermore, the judge allowed the defense counsel to specifically question number twenty-one, after the bench conference concerning each side's peremptory challenges, with respect to her acquaintance of the former employee. The final juror Montgomery had to present a race-neutral reason for striking was juror number twenty-seven. Montgomery claimed he did not want construction related workers to be on the jury, and the juror was an engineer by trade. The trial court found this was not a race-neutral reason and struck down Montgomery's use of a peremptory challenge.
¶ 6. Montgomery was found guilty of the illegal sale of hydrocodone as well as Diazepam.

STANDARD OF REVIEW
¶ 7. In cases dealing with a Batson claim, the Mississippi Supreme Court has adopted a standard of review which grants great deference to a trial judge's factual findings and reverses only when the finding of the lower court is clearly erroneous or against the overwhelming weight of the evidence. Baldwin v. State, 784 So.2d 148 (¶ 21) (Miss.2001). "`Great deference' has been defined in the Batson context as insulating from appellate reversal any trial findings which are not clearly erroneous." Florence v. State, 786 So.2d 409 (¶ 19) (Miss.Ct.App.2000). The trial court is granted such deference because the demeanor *474 of the attorney making the challenge is often the best evidence on the issue of race-neutrality. Stewart v. State, 662 So.2d 552, 559 (Miss.1995) (citing, Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)).

ANALYSIS

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO ACCEPT AS RACE-NEUTRAL THE EXPLANATION MONTGOMERY GAVE FOR STRIKING THREE JURORS.
¶ 8. Montgomery claims the trial court was in error for failing to accept the race-neutral explanation he gave for striking jurors one, fifteen, and twenty-seven. Montgomery makes no argument regarding the trial court's ruling on his challenge to juror number twenty-one. Montgomery claims he gave a facially race-neutral reason for excluding each of the jurors and these race-neutral reasons should have been accepted by the trial court. The State counters by alleging the reasons offered by Montgomery were simply not convincing reasons for the exclusion of the jurors.
¶ 9. Following the Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) holding, "once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination." Purkett v. Elem, 514 U.S. 765, 768-769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).
¶ 10. During review, this Court must first determine that a prima facie case of improper utilization of peremptory challenges has been met by the objecting party, the State in the case sub judice. Stewart, 662 So.2d at 558. A thorough review of the record shows that this burden has indeed been met by the State. The State clearly showed that the jury members which were challenged were all members of the race different from that of the defendant. Having determined the prima facie case has been met by the State, we then must review the race-neutral reasons provided in rebuttal by Montgomery, first determining if the reasoning is facially valid and then determining if the reasoning has pretexts for purposeful discrimination. Purkett, 514 U.S. at 768, 115 S.Ct. 1769. It is at this point the standard of review previously discussed is utilized, because the trial judge's decision will not be overruled unless it is found to be clearly erroneous. Florence, 786 So.2d at 415(¶ 19).
¶ 11. The race-neutral reason offered by Montgomery supporting his challenge of juror number one was simply that Montgomery did not like him. The trial court held dislike was not a race-neutral reason for a challenge, and this Court agrees. Montgomery offered no specific evidence to support this basis besides the fact Montgomery had seen the man around town and did not like the way the man acted. If this were permitted to be a valid race-neutral reason for a challenge, then anyone could make the general assertion that they did not like someone, while actually using the strike in a racially motivated way. There is nothing about the trial court's ruling which is clearly erroneous, and we affirm the trial court's holding on this challenge.
¶ 12. In support of his challenge to juror fifteen, Montgomery claims he *475 thought the juror might be related to Mr. Pittman. This question could have been answered simply by asking the juror whether they were related. In fact, the evidence suggests the jury was asked if anyone was related to Pittman, and no one responded. This evidence supports the trial court's refusing the challenge. The trial court's holding was not clearly erroneous, and therefore we must affirm the trial court on this as well.
¶ 13. Regarding the challenge of juror twenty-seven, Montgomery states he did not want any construction related workers on the jury, and this juror was an engineer. Montgomery said he was afraid someone in a construction related field might know the confidential informant, Pittman, who was a painter. The trial court was unconvinced that the challenge was race-neutral. Once again, there is nothing in the trial court's ruling to indicate the it is in any way clearly erroneous. For this reason, we must affirm the trial court's denial of this challenge.
¶ 14. Although Montgomery's explanations for his challenges were race-neutral on their face, they are weak to suggest that they were the real reason for the strike and were, therefore, pretextual in nature and were actually intended to disguise his real reason for the eliminating of whites from the jury. After a review of the facts and the law, we conclude the trial court did not act erroneously in denying Montgomery's use of his challenges. Therefore, we affirm the trial court as to this issue.
¶ 15. THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT ONE SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF TEN YEARS AND FINE OF $3,000 AND CONVICTION OF COUNT TWO SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF SIX YEARS TO BE SERVED CONSECUTIVELY TO COUNT ONE ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $3,000 IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS WITH SEPARATE WRITTEN OPINION.
IRVING, J., Concurring:
¶ 16. I agree with the majority that the trial court did not err in failing to accept Montgomery's explanation for striking juror number twenty-seven. However, I write separately to focus on what I believe to be an inconsistency in the trial court's ruling. Additionally, I write to point out what I also believe to be an unfair and improper judicial determination regarding explanations given for striking jurors in the face of a Batson challenge.
¶ 17. As observed by the majority, Montgomery sought to strike juror number twenty-seven because he did not want construction-related workers to be on the jury. The juror in question is an engineer and, at the time of trial, was a construction coordinator with 4 County Electric Power Association. The trial court disallowed the strike and gave the following reasons:
Juror number 26, Jimmy D. Franks, the challenge was that, well he might have been in the construction business and we didn't want anybody in the construction business on our jury. The Court sees no logic to that as a race neutral reason at all, and it sees no reason to hold that it's not anything but at [sic] attempt to challenge that juror for his race. Therefore, *476 the challenge to Juror Number 27 will be overruled.
¶ 18. Prior to disallowing the strike of juror Jimmy Franks, the trial court allowed Montgomery's strike of a college professor to stand. Montgomery gave the following explanation for striking the college professor:
D-5 is theprofessor at MSU and my client felt that a professor was not an individual that he wanted sitting on his jury regardless of the race, and he just did not want a Mississippi State University professor based on the attitude that he has ascertained that professors hold....
¶ 19. As stated, the trial court allowed Montgomery's strike of the college professor to stand. The court gave the following reason:
In the normal sequence of events, I would hold that that is not a race neutral reason; however, Mr. Allgood of the district attorney's office has given me that as an exact same race neutral reason when he challenged individuals that they were a college professor and that he did not want college professors on juries, and that was his race neutral reason. I would allow the challenge to Juror Number 23 for that reason.
¶ 20. I would agree with the trial court that a person's occupation alone should not be accepted as a race-neutral reason because such an explanation can easily mask the true reason for the strike, that is, the juror's race. Yet, I see no difference between striking a college professor and striking an engineer. It is clear that both strikes related in part to their professional status. However, the trial court allowed one to stand while disallowing the other. This is an inconsistency without justification.
¶ 21. It also appears to me that the strikes as well were related in part to the jurors' economic status, and, while striking a juror because of economic status is not covered by Batson, it is prohibited by state statute. Mississippi Code Annotated Section 13-5-2 sets forth the public policy of this state with respect to jury service. This section provides, inter alia, that "[a] citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status. Miss.Code Ann. § 13-5-2 (Supp.2001). (emphasis added).
¶ 22. Finally, I should point out that, while I believe that the facially race-neutral reason given for striking juror Franks was not sufficient to withstand a Batson challenge because such a reason can be easily used to mask the true reason for the strike, the supreme court has ruled that a juror's unemployed status can be a sufficient race-neutral reason. See Mack v. State, 650 So.2d 1289, 1299 (Miss.1994). Therefore, it seems to me that if striking a juror because he is unemployed can pass constitutional muster, striking a juror because of his professional employment status could also pass constitutional muster. To hold otherwise, I believe, would be a violation of the equal protection clause. Further, since in this state more African Americans, percentage wise, than European Americans are unemployed, any decision by the State to exclude unemployed persons from serving on the jury ought to require strict scrutiny. It is well settled law that, for purposes of the equal protection clause of the Fourteenth Amendment, classifications which are either based on race or operate to the peculiar disadvantage of a suspect class are inherently suspect and require strict scrutiny. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); Frontiero v. Richardson, 411 U.S. 677, 682, 93 S.Ct. 1764, 36 *477 L.Ed.2d 583 (1973). Clearly denying unemployed persons a right to serve on the jury in Mississippi operates to the peculiar disadvantage of African Americans since, as already observed, more African Americans, percentage wise, are unemployed than European Americans.