816 So.2d 425 (2002)
Chris G. BOWIE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01626-COA.
Court of Appeals of Mississippi.
April 23, 2002.
*426 Walter E. Wood, Ridgeland, attorney for appellant.
Office of the Attorney General, by Scott Stuart, attorney for appellee.
Before SOUTHWICK, P.J., LEE, and CHANDLER, JJ.

FACTS AND PROCEDURAL HISTORY
LEE, J., for the court.
¶ 1. On or about September 23, 1998, George Redd stopped at a convenience store south of Canton, Mississippi. While in the store, he looked outside to where he had parked his car and noticed a man, later identified as the appellant, Chris Bowie, getting into his car. Redd ran outside to stop the man from driving off, but the car sped away. The store attendant notified police, and they tracked down the stolen vehicle shortly thereafter and placed spikes in the road which forced the stolen vehicle to stop when the tires deflated. Once the car stopped, Bowie jumped out and fled to a nearby parking lot, but he was apprehended.
¶ 2. A jury trial was held, and Bowie was convicted of automobile theft. He was sentenced to serve five years in the custody of the Mississippi Department of Corrections with twelve months suspended. He moved for a directed verdict at the close of the State's case-in-chief, but the motion was denied. After the trial, he filed a motion for judgment notwithstanding the verdict or in the alternative a new trial, but such motion was also denied. Bowie now appeals to this Court arguing the State improperly used race as a factor when striking jurors and arguing that the weight of the evidence did not support the verdict. Finding no merit to his arguments, we affirm.

DISCUSSION OF THE ISSUES

I. DID THE TRIAL COURT ERR IN ACCEPTING THE STATE'S PEREMPTORY CHALLENGE OF MR. BROWN, A WHITE MALE?
¶ 3. With the first issue, Bowie points out that the State struck Juror No. 6, Mr. Brown, stating the reason that "Mr. Brown is a white male." When asked then to give a race-neutral reason, the State *427 noted that Brown was unemployed. Bowie argues that the State's initial statement that Brown was struck due to his race violates the provisions in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which prohibits striking jurors because of their race. In resolving this issue, we are aware of our standard of review:
Our standard for reviewing Batson questions is set forth in Lockett v. State, 517 So.2d 1346 (Miss.1987). In Lockett the court said: Batson clearly places upon the trial court the duty to determine whether purposeful discrimination has been shown ... Batson states that "ordinarily," a reviewing court should give the trial court "great deference"... [which] has been defined in the Batson context as insulating from appellate reversal any trial findings which are not clearly erroneous.
White v. State, 761 So.2d 221 (¶ 13) (Miss. Ct.App.2000). Looking to the State's request to strike Brown, we recognize that unemployment is an acceptable reason to strike a juror. Lockett, 517 So.2d at 1352. Bowie, though, argues that since the State initially claimed Brown should be struck from the panel due to his race, that the underlying reason for ridding him from the panel was his race and not his employment status. We look to the record and conclude that Bowie misinterprets the dialogue between the judge and the prosecutor, Mr. Emfinger. Pertinent transcript excerpts show:
COURT: Okay. What's your reason for striking Mr. Brown?
MR. EMFINGER: Your Honor, that's a peremptory challenge. Mr. Brown is a white male.
COURT: Well, I'mI'm required to get a sufficiently neutral reason to meet Batson requirements for all peremptories. Whatwhat reason do you have for Mr. Brown?
MR. EMFINGER: Well, the only reason that I would give the Court at this point would be that he has on his sheet that he's presently unemployed.
COURT: All right. The Court would strike Juror Number 6, Mr. Brown. That's S 3.
Whatever Bowie's interpretation of the above-quoted exchange between the judge and the prosecutor, the prosecutor gave a race-neutral reason for the challenge, so we find no constitutional violation.
¶ 4. We further point out that even though the defendant and Brown were of different races, the Mississippi Supreme Court has adopted the holding in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), and found that, contrary to Batson, like races are not required for racially-based challenges:
Traditionally, [under Batson] to establish a prima facie case of purposeful racial discrimination in the exercise of peremptory challenges, the opponent of the strike was required to show:
1. That he is a member of a "cognizable racial group;"
2. That the proponent has exercised peremptory challenges toward the elimination of veniremen of his race; and
3. That facts and circumstances raised an inference that the proponent used his peremptory challenges for the purpose of striking minorities.
However, this test was modified by the Supreme Court's decision in Powers v. Ohio, 499 U.S. 400, 415, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), in which the Court held that a defendant may object to racially-based exercises of peremptory challenges whether or not the excluded jurors and the defendant are of the *428 same race. This holding, in essence, eliminates the first two factors required by Batson. Thus, the pivotal question is "whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of strikes based on race or gender, or in other words `the totality of the relevant facts gives rise to an inference of discriminatory purpose.'"
Puckett v. State, 788 So.2d 752 (¶ 10) (Miss.2001) (citations omitted) (emphasis added). We find that Bowie did not meet his burden of proving that the State struck Brown due to his race. As previously stated, we find that in noting Brown's state of unemployment, the State provided a sufficient race-neutral reason for striking Brown; thus, we find no error here.

II. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO STRIKE TWO BLACK JURORS?
¶ 5. Bowie next argues that the State used racially discriminatory reasons to strike two jurors from the panel, both of whom were black and both of whom had relatives who had been charged with criminal misconduct. A white juror also stated he himself had been charged with criminal misconduct, but the State did not strike him. Bowie argues that this shows the State acted in a racially discriminatory manner.
¶ 6. Looking to the situations surrounding each of these jurors, one of the black jurors, Ms. Webster, had a relative that had recently been charged with a crime in Madison County, the same jurisdiction in which Bowie's case was being heard. The other black female, Ms. Howard, had a relative who had been charged with a crime and whose hearing was pending at that time in Madison County. The white male, Mr. Holmes, had been charged thirty years ago in Hinds, not Madison County, which the State argues distinguishes Holmes's situation from that of the other two jurors.
¶ 7. Bowie cites the rule from Magee v. State, 720 So.2d 186 (Miss.1998), which states, "Disparate treatment of similarly situated jurors can give rise to a finding of pretext." In the present case, we find that the jurors are not so similarly situated as to give rise to such finding of pretext. The two ladies' family members had been or were being prosecuted in Madison County, the same county and same district attorney's office in which the case on which they were asked to sit was being heard. Holmes, on the other hand, had been charged thirty years ago in a different county; thus, we find no correlation as to give rise to a finding of pretext.
¶ 8. We further recognize that no constitutional violation exists when a minority juror is struck from the panel due to a family member's having been charged with a crime. Magee, 720 So. 2d at (¶ 9). Additionally, no violation occurs when a jury member is struck due to a family member's having been prosecuted by the same district attorney's office as the present case. Benson v. State, 551 So.2d 188, 192 (Miss.1989). According to these rules, both Ms. Webster and Ms. Howard were struck for valid reasons. The court has the ultimate burden of determining if the burden has been met of proving that purposeful discrimination has occurred. Randall v. State, 716 So.2d 584 (¶ 9) (Miss.1998). Bowie has proven no error here in the trial court's actions. This issue has no merit.

III. DID THE TRIAL COURT ERR IN DENYING BOWIE'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF?
¶ 9. Bowie finally argues that the trial judge erred in denying him a directed verdict and in denying his post-trial motion *429 for judgment notwithstanding the verdict or in the alternative a new trial. We look to our applicable standards of review:
[A] motion for directed verdict, a request for peremptory instruction, and a motion for judgment notwithstanding the verdict all concern the sufficiency of the evidence. McClain [v. State, 625 So.2d 774 (Miss.1993)] stated the following concerning our standard of review in such instances: In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.... We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty....
Matters regarding the weight and credibility of the evidence are to be resolved by the jury.... Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion.... New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion....
Bridges v. State, 790 So.2d 230 (¶¶ 4, 6) (Miss.Ct.App.2001) (citations omitted). First, concerning the motion for directed verdict, we look to the evidence presented in a light favorable to the State, giving the State favorable inferences. The evidence showed that a man got into Redd's car and drove it away without permission, that a man matching Bowie's description ran from the car once it was stopped, and that the man apprehended was the same man that ran from the car. Accepting all of this evidence as true, together with all reasonable inferences therefrom, we conclude that the motion for directed verdict was properly denied.
¶ 10. Looking to Bowie's post-trial motion for judgment notwithstanding the verdict or in the alternative a new trial, we also find that the trial judge did not err in denying such motion. In support of the motion, Bowie, through a public defender, explained that Redd, the victim, testified that only one man got into the car at the convenience store, yet two men were seen running from the vehicle once the police stopped it. Bowie claims that since no explanation was presented as to where this second person came from, this discrepancy was material to his case and a new trial was warranted. As cited above, we look to the evidence presented in a light favorable to the State to determine if reasonable jurors could have found Bowie guilty based on the evidence presented. We also are required to give the State favorable inferences that can be drawn from the evidence. Bowie fled from the scene, once the vehicle became incapacitated. "[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." Mitchell v. State, 792 So.2d 192(¶ 46) (Miss.2001). Applying the standards, we find that the judge did not abuse his discretion in denying the motion for judgment notwithstanding the verdict or in the alternative a new trial. We affirm.
¶ 11. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF AUTOMOBILE *430 THEFT AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH ONE YEAR SUSPENDED ON SUPERVISED PROBATION AND PAY $682 RESTITUTION IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO MADISON COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, J. KING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
IRVING, J., CONCURRING.
¶ 12. The majority finds no Batson violation[1] with the striking of an unemployed white male juror who allegedly was struck because of his unemployed status. I agree that no Batson violation occurred because white males are not a minority in this state and no correlation can be drawn between the unemployment status of white males and race. However, I write separately to point out, as I have on several occasions in the past, that, in my opinion, refusing to allow unemployed persons to serve on the jury violates the Equal Protection Clause of the United States Constitution as well as statutory and constitutional provisions of the State of Mississippi.
¶ 13. Bowie did not challenge, on equal protection and state statutory and constitutional grounds, the exclusion of the juror in the court below. Consequently, I concur in the affirmance of his conviction.
¶ 14. As I noted in my concurring opinion in Montgomery v. State, Mississippi Code Annotated § 13-5-2 (Supp.2001) "sets forth the public policy of this state with respect to jury service." Montgomery v. State, 811 So.2d 471 (¶ 6) (Miss.Ct.App. 2002). This section proscribes discrimination in jury service based on economic status. Miss. Code Ann. § 13-5-2 (Supp. 2001). I continue to believe that excluding a juror from jury service because he is unemployed is discrimination based on economic status.
¶ 15. Moreover, I believe Section 26 of Article 3 of the Mississippi Constitution, which guarantees an accused "a speedy and public trial by an impartial jury of the county where the offense was committed" is violated when a juror is prohibited from serving on the jury because he happens to be unemployed. I cannot accept the notion that "an impartial jury" is one comprised of only employed persons. That, it seems to me, is by definition a partial jury.
BRIDGES, J., JOINS THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), prohibits discrimination in jury service based on race.