KING, P.J.,
for the Court.
¶ 1. Ramsey Robinson was convicted of aggravated assault in the Jackson County Circuit Court and sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, Robinson appeals and raises the following issues which we quote verbatim:
I. The trial court erred in failing to grant defendant’s motion for a directed verdict as the State failed to prove the necessary elements of aggravated assault and the verdict was against the overwhelming weight of the evidence.
II. The court erred in failing to require the State of Mississippi to provide race-neutral reasons for exercise of its peremptory challenges after the defendant made a prima facie case of discriminatory use of such challenges.
FACTS
¶ 2. On February 12, 2001, Robinson visited one of his elderly relatives, Ms. Hester Prince, in Pascagoula. According to Ms. Prince, Robinson ate breakfast with her that morning, asked her for some money, and used her telephone. Ms. Prince gave Robinson fifty cents, after which he left. After his departure, Ms. Prince called Robinson’s mother and stated that Robinson had just had breakfast with her.
¶ 3. Later that day, Ms. Prince heard a knock at her back door. Ms. Prince testified that as she opened the door, Robinson rushed in, threw something at her, began fighting her, and chased her throughout her home. Ms. Prince stated that Robinson struck her in the head with a chair.
¶ 4. At approximately 5:30 p.m., Mrs. Carolyn Robinson, a relative, called Ms. Prince. Mrs. Robinson testified that, on the telephone, Ms. Prince sounded like she was in pain or sick. Because Ms. Prince lived alone, Mrs. Carolyn Robinson and another relative, Juanita Robinson, went to Ms. Prince’s home, where they found her injured and bleeding. Carolyn Robinson called 911 for medical assistance.
¶ 5. Officer Michael Byrd of the Pasca-goula Police Department was dispatched to Ms. Prince’s home; he noticed that Ms. Prince had a cut along her neck and a “big cut” on her forehead. Officer Byrd retrieved a “Lin-x” paint can from her home which had blood all over it and what appeared to be fingerprints.
¶ 6. Ms. Prince was transported by ambulance to Singing River Hospital where she indicated to her family that Ramsey Robinson was her attacker.
¶ 7. Officer Wendell Green of the Pasca-goula Police Department testified that he went to the hospital and asked Ms. Prince who had attacked her, to which she stated that Ramsey Robinson was the person that assaulted her.
¶ 8. Officer Kenny Johnson also from the Pascagoula Police Department talked with *671 Ms. Prince. He took photographs of her injuries and attempted to question her. He stated that, while it was hard for her to talk due to the injuries to her throat, she did state that Ramsey Robinson was her attacker.
¶ 9. Jimmy Perdue of the Mississippi Crime Lab testified that one of the prints developed from the Lin-x can matched the fingerprint on the fingerprint card bearing the name Ramsey Clark Robinson.
¶ 10. On June 21, 2001, Robinson was indicted for aggravated assault pursuant to Mississippi Code Annotated Section 97-3-7(2)(b). After a jury trial on May 13 and 14, 2002, Robinson was convicted of aggravated assault. Robinson filed a motion for a judgment notwithstanding the verdict or in the alternative a new trial, which was denied.
ISSUES AND ANALYSIS
I.
Whether the weight and sufficiency of the evidence support the verdict.
¶ 11. Robinson contends that the evidence lacks the weight and sufficiency necessary to support a verdict of guilty. Robinson argues that the only direct evidence presented by the State was that of Ms. Prince, whom he described as being diagnosed with dementia. He also suggests that the physical evidence contradicts the testimony.
¶ 12. In addressing questions of weight and sufficiency of the evidence, this Court adheres to the following standard:
A reviewing court will not reverse and remand for a new trial on the basis that the verdict is against the overwhelming weight of the evidence unless it can conclude that allowing the verdict to stand will sanction an unconscionable injustice.
McClain v. State, 625 So.2d 774, 781 (Miss.1993).
On the other hand, sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with McClain’s guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. at 778 (citations omitted).
¶ 13. The State offered testimony that at the time of this attack Ms. Prince lived alone, supported herself, and prepared her own meals. The State offered Ms. Prince’s identification of Robinson as her attacker. The State offered testimony from the police officers that on at least two separate occasions Ms. Prince identified Robinson as her attacker.
¶ 14. Ms. Prince’s treating physician noted that she was somewhat forgetful at times, but there was no reason to believe that she suffered dementia prior to the attack.
¶ 15. The jury is charged with the responsibility of weighing the evidence, considering the conflicts in the evidence, and assessing the credibility of the witnesses. Moore v. State, 773 So.2d 984(¶ 6) (Miss.Ct.App.2000). The jury resolved these matters in favor of the State’s witnesses. Upon reviewing the record in this case, this Court cannot say that the jury’s decision was unsupported by credible evidence, nor can it say that the decision inflicts an unconscionable injustice upon Robinson.
*672 II.
Whether the trial court erred in failing to require the State to provide race-neutral reasons for exercise of its peremptory challenges after Robinson made a prima facie case of discriminatory use of such challenges.
¶ 16. Robinson alleges that the State’s use of three of its peremptory challenges against African American jurors constituted a violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Robinson contends that the trial court erred by failing to require the State to have racially neutral reasons for exercising its peremptory strikes.
¶ 17. On appellate review of this issue, the trial court’s decision is accorded great deference and will be reversed only when such decision is clearly erroneous. Walker v. State, 815 So.2d 1209(¶ 12) (Miss.2002).
' ¶ 18. Previously Batson required that the party objecting to the peremptory challenges must show: (1) that he is a member of a “cognizable racial group;” (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race; and (3) that facts and circumstances raised an inference that the proponent used his peremptory challenges for the purpose of striking minorities. Gibson v. State, 731 So.2d 1087(¶ 24) (Miss.1998). “However, this test was modified by the Supreme Court’s decision in Powers v. Ohio, 499 U.S. 400, 415, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), in which the Court held that a defendant may object to racially-based exercises of peremptory challenges whether or not the excluded jurors and the defendant are of the same race.” Borne v. State, 816 So.2d 425(¶ 4) (Miss.Ct.App.2002). We note that the Mississippi Supreme Court has adopted the holding in Powers as well. Id. Therefore, the pivotal question is whether the opponent of the strike has met the burden of showing that the proponent has engaged in a pattern of strikes based on race or gender, or in other words the totality of the relevant facts gives rise to an inference of discriminatory purpose. Id.
¶ 19. The trial court found that Robinson had established a prima facie case of the discriminatory exercise of peremptory strikes and thus required the State to offer racially neutral reasons for its exercise of peremptory strikes. When the State offers such reasons, the court is required to make an on-the-record determination that the peremptory strikes are facially race-neutral and are not a pretext for racial discrimination. Hatten v. State, 628 So.2d 294, 298 (Miss.1993).
¶ 20. The transcript reveals that Robinson’s attorney made a Batson challenge on the basis that three out of four blacks on the venire were struck. As to the first strike, the prosecutor stated that she asked to strike that person based on the response to her question of whether any family member or close friend had ever been charged with a crime. The potential juror indicated that he did in fact know someone who had been charged with a crime that fit into the category of family member or close friend. Regarding the next strike, the prosecutor indicated that she struck that person for the same reason that she struck the first person. In reference to the third strike, the individual stated that he was a friend of Robinson and last saw him approximately a year ago. Therefore, the prosecutor struck this person. The prosecutor did not strike another person mentioned by Robinson’s attorney. After the prosecutor stated her reasons for the exercise of the peremptory strikes, Robinson’s attorney was asked if he had further comment on the subject, he *673 responded that he did not, thereafter the court stated on the record that it found the challenges to be racially neutral.
¶21. Finding no error in the trial court’s decision, we affirm.
¶ 22. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO PAY A FINE OF $10,000 AND RESTITUTION TO THE VICTIM IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.